UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS WILLIAMSON,

Plaintiff,

v.

Case No. 25-cv-12996
Honorable Linda V. Parker

CITY OF FLINT, CHIEF TERENCE GREEN, and OFFICER WILLIAM METCALFE,

Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT DEFENDANTS' MOTION TO DISQUALIFY COUNSEL**

On September 22, 2025, Plaintiff filed this lawsuit against Defendants alleging constitutional violations pursuant to 42 U.S.C. § 1983 and violations of state law arising from her removal from a Flint City Council meeting on October 23, 2024. (ECF No. 1.) Specifically, Plaintiff asserts the following claims in her Complaint: (I) excessive force in violation of the Fourth Amendment against Defendant William Metcalfe, an officer with the Flint City Police Department; (II) First Amendment retaliation for protected speech against Officer Metcalfe; (III) municipal liability against the City of Flint for the Fourth and First Amendment violations; (IV) a duplicate Fourth Amendment excessive force claim against Officer Metcalfe; (V) deliberate indifference to serious medical needs against all

defendants; (VI) violation of procedural and substantive due process by all defendants under the Fourteenth Amendment due to the removal of Plaintiff from the public meeting; (VII) assault and battery against Officer Metcalfe; (VIII) negligence against all defendants; and (IX) intentional infliction of emotional distress against Officer Metcalf and the Flint City Police Department. (*See generally id.*)

Plaintiff is represented in this matter by Lawrence A. Katz of the Lento Law Group. Katz is licensed to practice law in Michigan and is actively admitted to practice in the Eastern District of Michigan. Defendants, however, have moved to disqualify Katz because Joseph D. Lento, for whom the Lento Law Group is named, has been suspended from the practice of law. (ECF No. 9.) Defendants do not claim that Katz has a conflict of interest in this matter; nor do they argue that he personally should be disbarred or suspended from practice in this District or any jurisdiction. Defendants also have filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17.) Both motions are fully briefed.

**Whether the Court Must Address the Motion to Disqualify First**

Other judges in this District have decided motions to disqualify Katz from representing the plaintiffs in the cases before them prior to ruling on pending

motions to dismiss.[1] This Court, in comparison, finds it less prejudicial to Defendants and more expeditious under the circumstances to proceed instead to their motion to dismiss. The Court acknowledges the Sixth Circuit's holding in *Bowers v. The Ophthalmology Group*, 733 F.3d 647 (6th Cir. 2013), which could suggest that this approach is wrong. However, *Bowers* and the cases relying on it are clearly distinguishable.

In *Bowers*, the Sixth Circuit did find that the district court erred by granting summary judgment in favor of the defendant without ruling on the plaintiff's motion to disqualify the defendant's counsel. *Id.* at 655. However, the basis for disqualifying counsel in *Bowers*—that being that the firm representing the defendant previously represented the plaintiff and gained confidential information during that representation substantially related to the pending litigation—is quite distinguishable from the basis Defendants raise here. The Sixth Circuit concluded that a district court must rule on a disqualification motion before ruling on a dispositive motion, reasoning:

> . . . the success of a disqualification motion has the potential to change the proceedings entirely. This is especially important when a district court rules on a Rule 56 motion for summary judgment. The reason is simple: if counsel has a conflict from previously representing the

[1] As Defendants point out in their motion to disqualify Katz, the Lento Law Group has filed at least thirteen lawsuits in federal and state courts since 2023, asserting constitutional challenges against various members of the Flint local government and police force. (*See* ECF No. 9 at PageID.51 & n.2.) Many of those lawsuits were dismissed for failure to state a claim.

> party seeking disqualification, as was alleged in the present case, there is a risk that confidential information could be used in preparing or defending the motion for summary judgment in violation of *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir.1990), or the relevant state rules of professional conduct. In other words, a potentially conflicted counsel's confidential information could infect the evidence presented to the district court.

*Id.* at 654.

The same concern led other circuit and district courts to follow *Bowers*. *See, e.g., Grimes v. District of Columbia*, 794 F.3d 83, 89-90 (D.C. Cir. 2015) (defense counsel previously represented a class of plaintiffs, which included the plaintiff's son); *Doe v. Romulus Cmty. Schools Dist.*, No. 25-cv-11295, 2026 WL 116420, at *1-2 (E.D. Mich. Jan. 15, 2026) (law firm representing the plaintiff previously performed a variety of legal services for the defendant school district, including involvement in an internal investigation of the district's former superintendent, who also was a named defendant in the case); *Escordi v. Macomb Twp.*, No. 21-10570, 2022 WL 1599436, at *2-3 (E.D. Mich. May 20, 2022) (defendant moved to disqualify counsel for the plaintiff where counsel previously performed over $300,000 worth of legal work for the defendant on a variety of matters). Those cases all involved a request for disqualification based on a prior attorney-client relationship between the party seeking to disqualify counsel and counsel for the opposing party. For example, the plaintiff in *Grimes*, who sued the District of Columbia for civil rights violations arising from the death of her son while he was

detained in a juvenile detention facility, sought to disqualify defense counsel who had represented a class of plaintiffs, including the plaintiff's decedent, in a lawsuit against the district based on conditions at the same facility. 794 F.3d at 89.

In concluding that the district court should have ruled on the plaintiff's motion to disqualify before reaching the defendant's summary judgment motion, the *Grimes* court relied on the Sixth Circuit's reasoning in *Bowers*, adding that "[r]esolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel." *Id.* at 90. The problem addressed in *Bowers*, *Grimes*, and these other cases, is not presented here where Katz's disqualification is sought because he is practicing under a law firm bearing the name of a suspended attorney. "[T]he success of the disqualification motion does not have the potential to change the proceedings entirely." *Bowers*, 733 F.3d at 654. In fact, it is unlikely to change the proceedings at all.[2]

The Court, therefore, proceeds to address Defendants' motion to dismiss.

[2] Plaintiff has two additional attorneys, neither of whom is associated with the Lento Law Group, now representing her.

**Whether Plaintiff States a Claim Upon Which Relief May be Granted**

*Rule 12(b)(6) Standard*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

When deciding a Rule 12(b)(6), the court's review ordinarily is limited to the four corners of the complaint. *See Hester v. Chester Cnty.*, 162 F.4th 780, 784 (6th Cir. 2025) (citing Fed. R. Civ. P. 12(d)); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). Usually, to consider matters outside the pleading, the court must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may

consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The court also may "rely on [] videos over the complaint to the degree the videos are clear and 'blatantly contradict' or 'utterly discredit' the plaintiff's version of events." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (brackets omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Hodges v. City of Grand Rapids*, 139 F.4th 495, 506-07 (6th Cir. 2025) (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)) ("In the motion-to-dismiss context, 'we have consistently held that we may only consider video footage over the pleadings when 'the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events.'"). "If 'no reasonable jury could watch the video' and agree with the plaintiff, the video 'allows us to ignore the 'visible fiction' in [the plaintiff's] complaint.'" *Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018) (quoting *Scott v. Harris*, 550 U.S. at 386). "This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." *Hodges*, 139 F.4th at 506-07 (brackets omitted) (quoting *Saalim*, 97 F.4th at 1002). A video that does

not blatantly contradict or utterly discredit the complaint is not considered on a Rule 12(b)(6) motion. *Id.* at 507 (citing *Saalim*, 97 F.4th at 1002).

*Plaintiff's Claims Based on her "Forceful" Removal*

All of Plaintiff's claims rise and fall on the allegation that Officer Metcalfe used excessive force to remove Plaintiff from the city council meeting, with the exception arguably of her First Amendment retaliation claim and her municipal liability claim to the extent it is based on retaliation. Plaintiff alleges in the Complaint that she was asked to leave the meeting and she verbally expressed her willingness to comply. (ECF No. 1 at PageID.4 ¶ 19.) She further alleges that "[w]hile attempting to gather her belongings, Officer Metcalfe forcibly grabbed Plaintiff's arm, despite her vocalized warning that her arm was compromised and that she was in pain." (*Id.* ¶ 20.)

Plaintiff claims she "experienced immediate and intense pain upon contact, and the officer's grip and twisting motion were executed with force that was neither necessary nor legally justified." (*Id.* ¶ 21.) According to Plaintiff, "[d]espite [her] verbal warning regarding her compromised arm, Officer Metcalfe failed to exercise reasonable care in his physical engagement" (*id.*), and Defendants failed to provide "timely or appropriate medical attention . . . despite the visible and acute nature of her injury" (*id.* at PageID.12 ¶ 81.) Videos of the incident "blatantly contradict" and "utterly discredit" these allegations.

The videos include the public recording of the city council meeting and footage from body cameras worn by Officer Metcalfe and Officer Daundria Frye, also from the City of Flint Police Department. (ECF No. 17 at Exs. 1A-1D.) Contrary to Plaintiff's contention, the videos do "conclusively depict[] the degree of force used, the manner of physical contact, grip pressure, [whether there was] twisting, [if any] pain [was] experienced by Plaintiff" due to any touching by Officer Metcalf, and the severity of any "resulting injury." (*See* ECF No. 19 at PageID.505.) The videos undisputedly show that the only physical contact Officer Metcalf made with Plaintiff during the entire encounter was a tap on her right shoulder, seen at 1:25 in the video from the city's live stream of the meeting.[3] (*Id.* at Ex. 1A, 2B.). As the videos depict, this contact occurred when Officers Metcalf and Frye approached Plaintiff from behind as she stood at the podium facing city council, waving a book and shouting. (*Id.* at 1:08-1:25.) It was after Plaintiff had been warned twice to stop disrupting the meeting and was told she was being removed when she failed to heed the council member's warning. (*Id.*)

As the videos further show, there was no gripping or twisting of Plaintiff's arm. Nor was any real force used. Plaintiff does not physically display or verbally express any signs of pain or discomfort.

[3] Office Frye actually tapped Plaintiff's left shoulder first, as shown at 00:16 in the video from Officer Frye's body camera. (ECF No. 17 Ex. 1C.)

Officers Metcalf and Frye then walked with Plaintiff, without touching her, to the front row, where her belongings sat. (*Id.* at 1:38-1:47.) The officers then stood away from Plaintiff while she slowly gathered her things. (*Id.* at 1:38-3:07.) Except for the taps on Plaintiff's shoulders indicated earlier, neither officer made physical contact with Plaintiff. (*Id.*) Plaintiff then walked out of the room, trailed by Officer Frye by at least a foot or two. (ECF No. 17 Ex. 1C at 1:38-2:34.) Officer Metcalf did not follow. (ECF No. 18 at Ex. 1D at 00:37-00:55.)

The actual facts clearly set forth in the video render Plaintiff's claims based on an alleged use of excessive force implausible. The Court is, therefore, granting Defendants' motion to dismiss Counts I and IV-IX of the Complaint. The remaining counts of the Complaint in which Plaintiff claims First Amendment retaliation and a municipal liability claim based on the alleged violation of her First Amendment rights are premised, at least in part, on Plaintiff's removal from the city council meeting for allegedly engaging in free speech.

*Plaintiff's Claims Based on Her Removal Allegedly for Protected Conduct*

To state a plausible First Amendment retaliation claim, Plaintiff must allege: (1) that she was engaged in protected conduct, (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in party, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en

banc). Plaintiff alleges that she was removed from the city council meeting due to her "political expression, public advocacy, and prior engagement in litigation against the City of Flint and its officials[,]" and "her association with political figures critical of the current administration and her involvement in civil rights advocacy." (ECF No. 1 at PageID.7 ¶ 42.)

However, the videos of the city council meeting reflect that a city council member ordered Plaintiff removed after Plaintiff undisputedly was shouting and speaking out of order and continued to do so even after being warned by a council member.[4] "[C]ourts have 'consistently rejected First Amendment claims against government officials who prevent individuals from further disturbing public meetings.'" *Clayton v. Young*, No. 3:22-cv-00936, 2025 WL 3722010, at *10 (M.D. Tenn. Dec. 3, 2025) (collecting cases); *Olasz v. Welsh*, 301 F. App'x 142, 145-46 (3d Cir. 2008) (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004)) (finding no First Amendment violation where city council member "constrain[ed the plaintiff's] badgering, constant interruptions, and disregard for the rules of decorum" during council meetings). The Sixth Circuit in fact has concluded under facts very similar to those here that the removal of an individual who has "repeatedly spoke out of turn, in violation of council rules" did not violate

[4] Notably, contrary to Plaintiff's allegations, a council member and not Officer Metcalf ordered Plaintiff removed.

the individual's First Amendment speech or access rights. *Biggs-Leavy v. Lewis*, No. 24-1317, 2025 WL 451369, at *3 (6th Cir. Feb. 10, 2025) (addressing the removal of the plaintiff from a Flint City Council meeting when she continued to voice her objections out of turn after being admonished by a councilwoman); *see also Youkhanna v. City of Sterling Heights*, 332 F. Supp. 3d 1058, 1070 (E.D. Mich. 2018), *aff'd* 934 F.3d 508 (6th Cir. 2019) (holding that the plaintiff's First Amendment rights were not violated when the plaintiff was removed from a city council meeting for violating the rules of order and being disruptive).

For these reasons, Plaintiff's First Amendment retaliation claim and her municipal liability claim premised on the alleged First Amendment violation also are subject to dismissal.

**Conclusion**

For the reasons stated, the Court holds that Plaintiff fails to state a claim upon which relief may be granted. The Court is, therefore, **GRANTING** Defendants' motion to dismiss (ECF No. 17). Defendants' motion to disqualify Plaintiff's counsel (ECF No. 9) is **DENIED AS MOOT**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2026